FRANCISCO A. AYCARDI and PASCUAL CASERTA, Doing Business under the Firm Name and Style of AYCARDI & CASERTA, Plaintiffs, *v.* CONRAD W. GIESE and Another, Defendants.

Supreme Court, New York County, March, 1930.

*Perry Allen* [*Walter M. Hinkle* of counsel], for the plaintiff.

*Bonynge & Barker* [*Robert J. Sykes, Harlan S. Perrigo* and *John E. Booth* of counsel], for the defendant Conrad W. Giese.

*Paul E. Mead,* for the defendant American Exchange Irving Trust Company.

LYDON, J. Under date of February 7, 1930, I handed down a memorandum in the above-entitled case stating my conclusions as the result of the trial. No findings have as yet been submitted or signed. In the meantime, counsel for the plaintiff on affidavit, and on March 8, 1930, applied for an order directing the defendant or its attorneys to show cause before me at my chambers on March 12, 1930, why plaintiff should not have leave to reargue orally the merits of the action and the significance of the testimony and evidence adduced, and the application of such testimony and evidence to the written memorandum heretofore handed down by me. In response to said order to show cause counsel on both sides appeared before me on March 12, 1930, and orally reargued their respective contentions in this action, and certain phrases in my former memorandum were adverted to as not being strictly in accordance with the fact. As a result of said order to show cause and oral argument I decided to grant the motion for the reargument, and, having heard counsel, I am now substituting this memorandum decision for and in the place of the memorandum heretofore handed down by me and filed February 7, 1930, the previous memorandum being withdrawn.

The deposit of $4,000 was made by the plaintiff to indemnify the defendant Giese against any loss which he might suffer by reason of the failure or refusal of the plaintiff Aycardi to form or cause to be formed a corporation, and to pay for his subscription to the capital. After a trial I must hold that the said $4,000 became the property of the defendant Giese, as the contract between the

parties provided that it was to be paid to Giese as liquidated damages in the event of such failure or refusal on the part of Aycardi to form or cause to be formed said corporation.

The proof shows that after the execution of the written contract the defendant Giese, acting upon it, leased offices in the city of New York, purchased furniture and otherwise obligated himself in preparation for the performance of the agreement in so far as his obligations were concerned. The plaintiff Aycardi, in my opinion, is responsible for the failure of the corporation to function, principally because he would not agree to proceed under the form of the letter of credit provided for in the written agreement, and at the last moment, when they were about to close, insisted that the corporation must provide an open letter of credit so that he could more readily purchase coffee in South America to ship to the corporation. The defendant Giese had no objection if the bank would grant any such letter of credit apparently, because he willingly accompanied the plaintiff Aycardi to the bank, with the result that the bank refused. The parties were then back to the point where they were subject to the terms of the written agreement, and Aycardi frankly said he would not go ahead unless there was an open letter of credit.

In my opinion Aycardi's delays throughout were certainly unreasonable and continuous from the point of view of a business man. He came to New York and wished to enter into a contract with the defendant Giese on behalf of his partnership in South America, and had no papers whatsoever to establish his authority. That led to interminable delays in getting paper after paper from South America and finally they reached the point where apparently everything was satisfactory and the matter was about to close, when the plaintiff Aycardi put forth his claim for the open letter of credit. Furthermore, Aycardi admitted that he could not meet his subscription for the stock in the corporation, and at the same time furnished the necessary capital with which to purchase coffee in South America by means of a sixty or ninety-day sight irrevocable letter of credit in American dollars on a New York bank for the full invoice price agreed upon, f. o. b. Puerto, Colombia. Plaintiff's counsel argues that he had in the hands of Giese, as the result of the sales of coffee, sufficient money which, if added to the $4,000 deposited in escrow, would be more than enough to pay for the subscription of stock. Even if that were so, how would he buy the coffee at the other end within the terms of this contract. He frankly admitted that he could not, and that was the reason he wanted an open letter of credit, and, apparently, for various reasons, the defendant Giese did not propose to guarantee any such instru-

ment which would permit Aycardi, at the other end, to draw any or all the money, and at such times as he wished, without restriction. The formation of this corporation, under the terms of the written agreement, had proceeded so far that the certificate of incorporation had been drawn, duly signed by the incorporators, and was actually filed in the office of the Secretary of State on the 14th day of June, 1928, but the plaintiff is unable to carry out the balance of the terms of his contract. This disagreement occurred about the first day of August. Then the lawyers interested in the matter and some friends tried their best to induce these parties to keep together, and several different propositions were suggested, all of which were objected to by one or the other, and nothing was accomplished, thus leaving the original agreement still open and unfulfilled.

The original agreement provided that this corporation was to be formed on or before April 15, 1928, but by reason of the numerous delays incidental to the requests by the lawyers for additional documents from South America to establish authority on the part of Aycardi, as well as a trip by Aycardi to South America, nothing was accomplished prior to April 15, 1928, and Aycardi requested an extension of time. Defendant Giese was under no obligation to grant such an extension and had a right at that time to deny this request and insist upon the retention or delivery to him of the $4,000 placed in escrow. However, through an attorney, one David Grant, who had acted to some extent for both parties in their negotiations, a letter was sent to Aycardi, who was still in South America, embracing the two alternative conditions under which Mr. Giese was willing to extend the time within which the corporation might be completely organized and formed. Incidentally it must be recalled that under the agreement between the parties dated December 13, 1927, this corporation was to be formed prior to April 15, 1928, and that Giese was to receive a salary of $10,000 a year. At the time of Mr. Grant's letter, March 3, 1928, it was quite obvious that Aycardi would not be back to New York in time to perform under the contract, and he had asked for an extension. On receipt of this letter Aycardi cabled that he accepted the second alternative and that second alternative provided that, as Mr. Giese felt that he had sacrificed in all nearly four months of negotiations, in which very little had been accomplished, he did not care to delay any further under the contract unless some means were provided by which he would receive the equivalent of the salary provided for in the written agreement, which was to be paid by the corporation. He, therefore, suggested that under this second alternative proposition his rights of indemnity on the $4,000 on deposit, in the event the corporation was not organized, should not in any way be affected,

and on that condition he wished a salary at the rate of $10,000 a year, to commence May 1, 1928, which was to be separate and apart from the $4,000. Further, that he was to have the right to retain from the proceeds of the sale of coffee as much as would be sufficient to guarantee the payment of his salary; once the company is finally formed it will assume payment of his earned salary, but in the event that the company should not be formed, it would be charged to the plaintiff Aycardi, who must agree to pay the same.

Under this supplemental and separate agreement coffee was shipped from South America to the defendant Giese and plaintiff claims that he has never received a proper accounting in the matter of the transactions under this separate agreement, which was in force pending the formation of the corporation. As to these transactions in coffee had between the parties, the plaintiffs are entitled to an interlocutory judgment requiring the defendant Giese to render to the plaintiffs an accounting under oath of the sales by such defendant, as plaintiff's agent, of all coffee received and sold by him for the plaintiff, and said account to show the quantities sold, the persons to whom sold, the date of each sale and the date of the receipt by the defendant Giese of the proceeds of such sale, and the amount thereof, showing exactly the net proceeds and how the difference between the gross and net profits is calculated. A referee will be appointed to take and state the account. The agreement which was entered into granting the extension of time for the formation of the corporation was later supplemented by a communication sent to the plaintiff on April 14, 1928, which reads as follows: " That until the formation of the corporation the funds of same, Messrs. Aycardi, Arango & Co., or proceeds received from the sale of their coffee now here or now en route, remain in my hands to indemnify me against any losses incurred or that may be incurred in the conduct of the business in New York, as well as any other loss due to such extension." In the earlier communication addressed to the plaintiff no date had been fixed for the termination of the extension. This omission was cured by the following agreement: " That the extension in question may be terminated by me at any time at my discretion and shall come to an end thirty days after notice shall be given by me to you in behalf of Messrs. Aycardi, Arango & Co. to this effect." When the parties came to the parting of the ways the plaintiff, by letter of August 28, 1928, notified the defendant Giese that the contract was to be considered as having no further binding force upon him or his firm and he further demanded the release of the $4,000 and he also demanded an accounting.

The contention of the defendant is that he served a notice on August thirty-first of the cancellation of the agreement under which they were operating in coffee and as the provisions of that agreement entitle the defendant to cancel at his discretion on giving thirty days' notice in w iting, that, therefore, his salary under that last agreement must continue until thirty days after the notice given by him, whereas the plaintiff claims that his letter of August twenty-eighth severed all connection. Certainly the letter of August twenty-eighth was a final direction to cancel all contract relations between them, and I see nothing in the agreement that prevents the plaintiff from canceling the agreement as of any date that he selected, and it did not rest entirely with the defendant Giese to say whether or not this contract could be brought to an end, as there was no definite time fixed, nor is there any definite provision in the contract which provides that upon cancellation by either party the salary of Giese was to continue for thirty days. I think, therefore, that his salary ended with the month of August. Submit findings on notice.